The Towns of WETHERSFIELD and GLASTENBURY *against* HUMPHREY and others :

### IN ERROR.

Where the county court, on a petition for the relocation of a ferry, or the establishment of a new one, and for the laying-out of such highways as should be necessary to furnish convenient access thereto, made their report, finding, that common convenience and necessity required a relocation of the ferry, and the laying-out of new highways to furnish convenient access thereto, and then proceeding to relocate such ferry, and lay out such highways; on a remonstrance to such report, evidence was offered to show, that the ferry and highways so relocated and laid out, were not of common convenience and necessity; which evidence the court refused to receive, there being no unfairness or irregularity in the committee's proceedings; it was held, that this determination of the court was not erroneous.

Where the committee, in the first instance, reported only the relocation of the ferry, and afterwards, by direction of the court, proceeded to lay out the highways furnishing convenient access thereto; it was held, that this course was unexceptionable.

Where the committee laid out a tract five rods wide, adjoining the landing-place of the ferry, with permission to land on any part thereof, and to use and pass over the same as a highway; it was held, that there was no error in this proceeding.

Where the counsel for the petitioners, on the hearing before the committee, stated to them, in presence of the opposing counsel, that he had prepared a *memorandum* of what he claimed to be proved, which he had intended to lay before them, but had mislaid it; and a few days afterwards, without the knowledge of the opposing counsel, he transmitted to the committee a statement of the number of crossings at the former ferry within a certain period, and an estimate of the saving of expense by means of the ferry, referring, for the truth of the facts stated, to the witnesses who had been examined; it was held, that in the absence of any fraud or improper design, on the part of the counsel, this communication did not render the proceeding erroneous.

Where a highway laid out to furnish access to the ferry, passed over the neck or mouth of *Keeney's* cove, a body of water setting up from *Connecticut* river; it was held, that the laying-out was not exceptionable as an obstruction to navigation.

The navigation, the obstruction of which is a public nuisance, is on waters whereon the public pass and repass, with vessels or boats, in the prosecution of commerce essentially valuable.

THIS was a petition to the county court, brought by *Lemuel Humphrey* and others, against the towns of *Wethersfield* and *Glastenbury*, alleging, that the ferry across *Connecticut* river, between those towns, called *Pratt's ferry*, had been discontinued, whereby the public travel was incommoded, and

praying for the relocation of such ferry, or the establishment of a new one, and the laying-out of such highways leading thereto as should be necessary.

The county court, *November* term, 1847, appointed *R. R. Phelps*, *Abner Hendee* and *Jabez King*, Esqrs. a committee to enquire into the matters alleged in the petition, and the public necessity and convenience of relocating said ferry or establishing a new one ; and if they should deem it expedient, to relocate said ferry, or establish a new one, at such place as would best promote the public interest, and accommodate the public travel; and also, to lay out such highways leading to the ferry by them determined upon, as should be necessary to furnish suitable and convenient access thereto. At the term of the court held in *March* 1848, two of the committee, *viz., Hendee* and *King*, made their report, in which they found, that public convenience and necessity, and the course and demands of public travel, required, that said ferry should be reëstablished or a new ferry located, at some point as near the former location of *Pratt's ferry* as convenient, and then proceeded to fix and determine upon a certain point, for the purpose above specified. *Phelps*, the other member of the committee, dissented from this report, giving his reasons in a separate report to the same court. The towns of *Glastenbury* and *Wethersfield* severally remonstrated against the acceptance of the report of the majority.

Upon a hearing of the remonstrants, they offered evidence to prove, that said ferry was not of common convenience and necessity ; and that in case it was established, the roads leading to it could not be made so as to furnish the public, at all times, access thereto, without an expenditure wholly disproportionate to the public benefit to be derived from the ferry. But the court was of opinion, that as the committee had enquired into and passed upon these questions, there being no fraud or misconduct on their part, their action was conclusive, and rejected the evidence.

The cause was then continued to the term of the court in *August* 1848 ; when the remonstrants were fully heard upon the matters complained of. In respect to the objection that the committee had not laid out any roads leading to the ferry, the court decided, that the committee had a right to desig-

nate the location of the ferry, and leave the subject of roads to a further enquiry, or some other tribunal.

In respect to another objection, *viz.* that the five rods of ground embraced by the landing-place of the ferry located by the committee, was the private property of individuals, and could not be taken for public use, without compensation, the court found this to be true, but was of opinion that the designation thereof by the committee as necessary or convenient for the ferry, could not affect the rights of the proprietors, and did not vitiate the location of the ferry.

In respect to another objection, stated in the *Wethersfield* remonstrance, the court found, that when the committee were out, in *March* 1847, *Martin Welles*, Esq., counsel for the petitioners, endeavoured to show the saving to the public, in time and money, by the establishment of the ferry prayed for, and went into a partial detail of what he claimed the testimony proved, and stated, in the presence of the opposing counsel, that he had prepared a *memorandum* of what he claimed, which he had intended to lay before the committee, but had mislaid it ; that the case was argued in behalf of the several parties, during most of the succeeding day, and closed by said *Welles*, nothing further being said in regard to the *memorandum ;* and that three or four days afterwards, a statement was drawn up and signed by him, showing the number of crossings at the former ferry, within a certain period, with an estimate of the saving of expense, by means of the ferry ; which statement, in pursuance of the suggestion made by him to the committee, but without the knowledge of either of the counsel concerned in the cause, he transmitted to two of the committee.   Whether the facts contained in this statement were true or untrue, did not appear.

In respect to a matter contained in the *Glastenbury* remonstrance, the court found, that should the ferry reported by the committee be established, in order to accommodate the public, a road must be laid across the neck or mouth of *Keeney's* cove, which is a body of water in *East-Hartford* meadow, setting up from *Connecticut* river, and which is navigable for vessels of a moderate size, and in which vessels have occasionally wintered, but which is valuable chiefly for its private fisheries ; that a bridge has been thrown across said water, near its junction with said river, by individuals,

to accommodate them in the occupation of their meadow lands, and continued there, so far as it appeared, without complaint, for several years past.   The court was of opinion, that this cove had always been occupied and claimed as the property of the adjoining proprietors, but did not find the fact that it was private property.

The court then approved the location of the ferry at the place recommended by the committee, and established it. And whereas the committee omitted to lay out or designate any road on the *East* side of *Connecticut* river, leading to this ferry, the court appointed the members of the former committee, a committee to lay out such road or highway from the *Eastern* boundary of said ferry to any point in the highway leading from *Hartford* to *Glastenbury*, that they should think expedient ;  and to make such alterations in the highway on the *West* side of said river, if any should be required, as should be necessary to furnish convenient access to said ferry.

A majority of the committee, in *November* 1848, laid out a highway, two rods wide, leading *Easterly* from said ferry, across *Keeney*'s cove, to the highway between *Hartford* and *Glastenbury*, specifying courses and distances.   They also laid out, for the accommodation of said ferry, on the *Eastern* bank of said river, a tract of land, five rods in width on each side of such road so laid out to be two rods wide—the whole being twelve rods in width—and running *Easterly* from said river, the same width, two chains and seventy-five links, with permission to land on  any part thereof, and to use and pass over the same as a highway.   They also assessed damages to individuals for the laying-out of said highway over their respective lands, and for injury to their rights of fishing in *Keeney*'s cove.   They also laid out a road to the ferry on the *West* side of *Connecticut* river, in the course of the present highway, but of greater width, assessing damages to the proprietors of the land ;  and provided, as on the *East* side, a landing-place adjoining the ferry, of greater width than the highway.

This report being returned to the court, at its term in *March* 1849, the towns of *Glastenbury* and *Wethersfield* remonstrated against the acceptance thereof, assigning sundry reasons.   The court found, that the highways so laid out and

*Hartford,*
August, 1850.

Wethersfield
*v.*
Humphrey.

reported by the committee, were of common convenience and necessity, and especially necessary in order to furnish convenient access to said ferry; and they were thereupon established as public highways, and the assessment of damages approved.

The towns of *Wethersfield* and *Glastenbury*, the original respondents, thereupon brought a writ of error in the superior court; which was reserved for the advice of this court.

*T. C. Perkins* and *Hooker*, for the plaintiffs in error, contended, 1. That the county court should have received the evidence offered by the remonstrants, to show that the ferry and roads in question were not of common convenience and necessity. The statute gives the power of enquiry to *the court. Stat.* 387. § 28. And the court may make such enquiry, "either by the county commissioners *or otherwise;*" but all that is done, the law considers as done by *the court.* The province of a committee is to *aid* the court—not to usurp or supersede its power. A court of chancery may appoint a committee to enquire into the facts alleged in the bill; but the report of such committee does not preclude the court from making further enquiry. *Callender* v. *Colegrove,* 17 *Conn. R.* 1.

2. That the highways leading to the ferry, should have been laid out, if at all, cotemporaneously with the relocation of the ferry. The petition averred the necessity of these highways; the court found them necessary, and ordered the committee to lay them out. The ferry would be useless, without access to it. Two proceedings would add to the expense; and the expense might be such as, in view of it, to render the ferry inexpedient. Besides, after one committee had been appointed and had reported, the court could not appoint another.

3. That the committee had no power to lay out *landing-places*, in addition to the highways. A landing place is neither a ferry nor a highway.

4. That the communication made by Mr. *Welles* to the committee, after the public hearing and argument of the case, was illegal and of dangerous tendency. It related to the merits of the controversy; and was made for the purpose of influencing the minds of the committee; was fitted for that

purpose ; and was transmitted without the knowledge of the opposing counsel. If such a proceeding be sanctioned, there will be no such thing as a fair hearing before a committee. On a hearing before arbitrators, it would be a sufficient cause for setting aside the award. *Dobson* v. *Groves,* 6 *Ad. & Ell. N. S.* 636. (51 *E. C. L.* 636.) In re *Plews* and *Middleton,* 5 *Ad. & Ell. N. S.* 845. (51 *E. C. L.* 845.) It is needless to say, that it would not be tolerated in a trial before a jury.

*Hartford, August, 1850,*

*Wethersfield v. Humphrey.*

5. That the highway on the *East* side of *Connecticut* river, could not be laid across *Keeney's* cove, thereby obstructing the navigation. The court has found, that *Keeney's* cove is a body of water in *East-Hartford* meadows, setting up from *Connecticut* river, which is navigable for vessels of moderate size, and where vessels have occasionally wintered, but which is valuable chiefly for its private fisheries. A bridge over water thus navigable, would be a public nuisance. *Charlestown* v. *County Commissioners of Middlesex,* 3 *Metc.* 202. *Commonwealth* v. *Charlestown,* 1 *Pick.* 180. 186. *Commonwealth* v. *Coombs,* 2 *Mass. R.* 489. 492. *Wadsworth* v. *Smith,* 2 *Fairf.* 278. [There were some other matters assigned for error, and remarked upon in argument, which it is not necessary to notice here.]

*Welles* and *Hungerford,* for the defendants in error, contended, 1. That the county court will not allow a re-hearing upon the facts, or receive evidence that the committee should have made a different finding, unless they had committed some error on their own principles, or have been guilty of fraud or other misconduct. It is certainly not the *practice* to hear the evidence again. In this case, it would have been at least an indiscreet exercise of the power of the court, to hear the evidence offered. In the first place, the report of the committee sets forth facts, which, if true, show the necessity of the road and ferry. Secondly, the law of the state establishing former ferries, shows, that they are of public necessity. The point may be considered as settled by the legislature, that some ferry was necessary; and here the question was one merely of relocation. Thirdly, the mere inspection of the map of the state shows, that the great courses of travel, on each side of the river, are adapted to crossing at

*Hartford,*
August, 1850.

Wethersfield
*v.*
Humphrey.

this point. Fourthly, if the court had heard evidence on this point, it must have led to a hearing of all the evidence which the parties chose te offer, and another trial of twenty-five days would have followed.

2. That the second assignment of error is altogether unfounded. Both the court and committee have laid out a road on each side of the river, furnishing suitable and convenient access to the ferry. If the objection is, that the court did not lay out the roads at the time they established the ferry, it is a sufficient answer to say, first, that the whole proceedings were *in fieri,* until completed. Secondly, until the ferry was located, it could not be known that roads would be required, or if so, at what place. Thirdly, after the establishment of the ferry, the roads might be laid out, either by the court directly, by a committee of the court, by the county commissioners, or by the select-men of the respective towns.

3. That the third assignment is equally unfounded. The landing-place is laid out as a highway, and damages are assessed.

4. That the statement transmitted by Mr. *Welles* to the committee, was no ground of error. In the first place, the statement is a mere arithmetical computation, derived from facts which were in evidence before the committee; and their accuracy is not questioned. Secondly, it was not proved or claimed before the county court, that there was any fraud or improper design in making the statement. Thirdly, full notice was given to the opposing counsel, on the argument, that such a statement had been prepared, was mislaid, and would be handed to the committee. Fourthly, a committee for such a purpose is not like a jury; they view the premises, hear statements, and decide in view of all the circumstances. They are not restricted to common law evidence.

5. That the laying of the road across *Keeney's* cove, was not objectionable as an obstruction of navigation. The finding of the court does not show that the navigation here was of any value. To sustain the objection, it must appear affirmatively, that this water is navigable for some useful or valuable purpose; and that this easement, or valuable right of passage, has been disturbed, or will be of necessity destroyed; neither of which appears from the finding. *Wadsworth* v.

*Smith,* 2 *Fairf.* 278, 281.   The claim of navigation at *Kee-* <span>Hartford,</span>
*ney's* cove, is a broad farce.  It may be passed by a draw <span>August, 1850.</span>
in the bridge, by a platform laid upon a boat, or by a ferry. <span>Wethersfield</span>
It has been in fact crossed, for many years, by a bridge and <span>*v.*</span>
road, built by the owners of adjoining lands, without com- <span>Humphrey.</span>
plaint or objection.   No claim was made before the commit-
tee, that this was navigable water, or that any public right
would be affected by the road.

ELLSWORTH, J.   None of the errors assigned in this case,
are of a serious character, or of difficult solution.

1. The first error is, that the county court refused to hear
evidence that the ferry and roads were not of common con-
venience and necessity, *i. e.* to *retry* the facts which had
been passed upon, by the committee.   The county court is
empowered, by section 28th of the act relating to ferries, to
examine into the truth of the matters alleged, by the aid of
the commissioners of the county, or *otherwise.*   Of course, it
could enquire by a committee of its own choice ; and as this
was done, and no objection is made to the fairness and regu-
larity of their doings, there is no reason for a reëxamination
or reversal.   Why should the county court reëxamine the
case, or rehear the testimony of witnesses, before the com-
mittee ?   That committee was selected for the very purpose
of repairing to the place itself, where the ferry was expected
to be established, in order that, by their own observation,
they could better decide upon its necessity, and the roads
which might be needed.   The court could not possibly be as
well qualified, as were the committee, to decide upon the
facts in controversy.   Besides, the expenses of a re-hearing
would constitute a most serious objection to such action by
the court.   In analogous cases of committees in chancery, or
auditors, no such rehearing is allowed in mere matters of fact ;
though relief will be granted, if there is unfairness or infor-
mality in the proceedings.

2. The second error assigned is, that neither the court nor
committee have laid out any roads leading to the ferry.

This error is altogether unfounded in fact.   The committee,
in their first report, state, that they have " fixed and deter-
mined upon a location for said ferry," and recommended its
establishment.   After this, the committee were directed (the

*Hartford,*
*August, 1850.*

*Wethersfield*
*v.*
*Humphrey.*

proceedings being *in fieri,*) to go forward, and lay out the necessary roads.   Until the ferry had been established by the court, it could not be known to the committee, that roads would be required ; and therefore, to lay them out, in the first instance, might have been a useless expense.   Besides, the court might have left it to the commissioners of the county, or to the select-men of *Wethersfield* and *Glastenbury,* to lay out the necessary roads to the ferry.

3.   The third error assigned is, that the five rods adjoining the landing-place, is not laid out as a highway.   We think the second report of the committee shows the fact to be otherwise.   The committee say, they " lay out, for the accommodation of said ferry, a tract of five rods in width on each side of the two rods of highway, to be used and passed over as a *highway*."

4.   The fourth error assigned is, that Mr. *Welles* transmitted to the committee, some two or three days after the hearing, a certain written statement, which unduly influenced them in their conclusions.

Were this committee a jury, empanneled to act in court, and sworn to decide according to the evidence given in court, and to keep their own counsel, and suffer no one to speak to them about the business or matters in hand, but in court, the objection would have great force.   But this is not the character of the committee.   They may, and they are expected to, hear evidence from all persons who feel an interest, on the ground or elsewhere.   Generally, they have a regular hearing, and receive testimony according to the rules of courts of justice ; and they ought never, any where, to allow of unfairness or advantage in any party or their attorneys.   We see nothing of this character, in this instance.

On the trial, Mr. *Welles* stated, he had prepared a *memorandum* of what he *claimed* to be *proved,* but had mislaid it. Immediately after, he finds it, or prepares another, referring, for the truth of his facts, to the *witnesses who had been examined,* and sends it to the committee.   We must presume, that the committee, in making up their judgment, made the necessary distinction between mere statement and proof ; and that they rejected all secret or unfair communications, if any there were, either before or after the public hearing.   The plaintiffs do not pretend, that there was any fraud or design, on the

part of Mr. *Welles;* and we do not believe his paper state-
ment had an influence beyond what it was entitled to.

5. The fifth objection is, that the road is laid across the
neck of *Keeney's* cove.   This objection is made on the ground
that the bridge or causeway interrupts navigation ; that it is
a public nuisance, not to be allowed, without the special con-
sent of the legislature.   If it be indeed a nuisance, as claimed,
the objection would deserve serious consideration ; and if it
be an obstruction to navigation, which is carried on between
the states, or with foreign nations, even the consent of our
legislature would not be enough to secure this interruption of
commerce.   But there is no such navigation here, which be-
longs to the jurisdiction of one or the other.   This cove can-
not be said to be navigable, by any craft whatever, though at
times, a fish-boat, or skiff, or *Indian* canoe may be pushed
through its waters ;  or, in the winter months occasionally, a
small sea-boat is laid up to avoid the ice of the river.   But
this is not navigation.   That only is such, and those only are
navigable waters, where the public pass and repass upon
them, with vessels or boats, in the prosecution of useful occu-
pations.   There must be some commerce or navigation which
is essentially valuable.   A hunter or fisherman, by drawing
his boat through the waters of a brook or shallow creek, does
not create navigation, or constitute their waters channels of
commerce.   Lord *Hale* says, in his treatise *de jure maris,*
" There be some streams or rivers that are private, not only
in property and ownership, but also in use, as little streams
and rivers that are not a common passage for the king's prop-
erty."   The doctrine contended for, by the plaintiffs, would
convert numerous bridges over private rivers and inlets on
the margin of *Long Island Sound,* into unconstitutional ob-
structions and public nuisances.   And so, too, if this highway
cannot be laid out, for the reason alleged, then most of the
highways and private ways, crossing the inlets and coves,
from *Stonington* to *Greenwich,* are unconstitutional and un-
lawful; for they were not laid out by permission from the
state or the *United States.*   Such a doctrine has not received,
and never can receive, the sanction of any court of justice.
Nothing can be more preposterous.   The whole matter is
quite too trivial to warrant the grave questions, which have

*Hartford,*
August, 1850.

Wethersfield
*v.*
Humphrey.

been made by counsel.    The so called *cove*, is the mere outlet of " *Pewter-pot brook.*"

Besides, it appears, this piece of land, or water, has been crossed, for many years, by a bridge and road maintained by the owners of adjoining lands ; and we do not readily perceive, that the proposed improvement will increase the interruption of navigation.

And further, the county court will require the road, if necessary, to be so constructed, as to prove no obstruction. This might be done, by a draw-bridge, or in some other way, as should be found best.

We do not deny the principles laid down in the cases cited at the bar from *Massachusetts* and *Maine.*    But they are not like this case, in their material characteristics.    They are cases of the navigation of *wide, deep, navigable rivers, extensively used by vessels entering from the sea.*

The remaining errors are too trivial to demand our notice. We advise the superior court that there is no error.

In this opinion the other Judges concurred.

Judgment affirmed.