Brown *v.* Towns of Preston and Ledyard.

---

THEOPHILUS BROWN AND OTHERS *vs.* TOWNS OF PRESTON AND LEDYARD.

The statute, tit. 31, ch. 2, § 29, confers upon the Superior Court the power to lay out a highway across a navigable stream, in cases where public convenience and necessity require the construction of such highway, although the navigation of the stream is of such a character that it will require a drawbridge for accommodation.

PETITION for a new highway; referred by the Superior Court to a committee, who reported that in their opinion the highway would be of common convenience and necessity, and thereupon surveyed and laid out the highway as prayed for in the petition.

The respondents remonstrated against the acceptance of the report of the committee, and upon the hearing of the remonstrance the court (*Sanford, J.*) found the following facts:

The lay-out by the committee extends across Poquetannoc Cove, about midway between the village of Poquetannoc and the mouth of the cove, at Lewis' Point (so called), at which place the cove is the division line between the towns of Preston and Ledyard. Said cove is an inlet of the Thames river, and extends to said village, a distance of about two and one-half miles, and the channel of the cove from where the lay-out crosses it to the mouth, is some twenty feet wide, somewhat crooked, and varies in depth from one to seven feet, depending upon the state of the tide, which ordinarily rises and falls therein a trifle over three feet. The cove is navigable for scows, open-deck vessels, and other small craft of light draft, from its mouth to said village. The cove is so navigated, more especially by the people of the village, for the purposes of transporting the coal which is there used for factory purposes, and to some extent by the inhabitants for fuel, also for bringing up rockweed used by them for agricultural purposes. The cove is also used for conveying lumber from said village to places on the Thames river and the village of Mystic. And such navigation is useful and valuable to the inhabitants of said village and vicinity. And a bridge across the cove at the point indicated in the report would be an obstruction to such navigation, unless such bridge should be constructed with a suitable draw, so as to permit vessels of the character described to pass.

By an act of the General Assembly of this state, the Norwich and Worcester Railroad Company were authorized to extend their road to Long Island Sound, and in pursuance thereof constructed their road to Allyns Point in said Ledyard, which road extends across the mouth of the cove; and when the road was built in the year 1842, the company constructed a draw-bridge in their road at the mouth of the cove, with a passage-way of fifteen feet, through which passage-way all crafts navigating the cove have passed since that time.

If a suitable draw-bridge is constructed at Lewis Point in the lay-out, there will be no serious obstruction to the navigation of the cove.

The court thereupon overruled the remonstrance, accepted the report of the committee, and ordered the highway opened and laid out accordingly.

The respondents filed a motion in error, assigning the following errors:

1. That upon the hearing as to the acceptance of the report of the committee, the judgment should have been in favor of the remonstrants, and said report should have been set aside and not accepted by the court.

2. That the court erred in accepting the report of the committee, inasmuch as it appears that said highway is laid across a navigable stream of water, to wit, Poquetannoc Cove, and that the navigation of said cove is useful and valuable to the inhabitants of said towns, for manufacturing and agricultural purposes.

3. That the court erred in accepting the report of the committee, for that the committee exceeded their powers in laying said highway across said Poquetannoc Cove, as set forth in said report.

*Hovey,* for the town of Preston, and *Lippitt* and *Pratt,* for the town of Ledyard, in support of the motion.

No power is conferred by the statute on a committee to lay out a highway across a navigable river, when such highway will either obstruct navigation altogether, or else will necessitate the construction of a bridge with a draw. This case is clearly distinct from the case of *Hurlburt* v. *Towns of Groton and Ledyard,* 22 Conn., 178. In that case it appeared that the navigation of the cove across which the highway was laid, was of such a character that it would not be materially obstructed by the building of a bridge. In the case at bar, the court finds that the navigation of Poquetannoc Cove is " useful and valuable," and that the highway laid across said cove would be an obstruction, unless a bridge should be constructed with a suitable draw.

The case at bar then presents this point: Is the power to lay out a highway across a navigable river, the navigation of which is of such a character that it will require a draw-bridge

for its accommodation, conferred by the statute on the Superior Court ? Such a power never has been exercised. The private acts and resolutions show charters for the purpose of authorizing the building of draw-bridges. The legislature of each state, in all cases, has kept navigable waters and the places where draw-bridges should be located under its control. *Commonwealth* v. *Town of Charlestown,* 1 Pick., 180; *Town of East Haven* v. *Hemingway,* 7 Conn., 186; *Jolly* v. *Terre Haute Draw Bridge Co.,* 6 McLean, 237; *Works* v. *Junction Railroad,* 5 id., 425.

*Halsey* and *Lucas,* with whom was *Ripley,* contra, cited *Clark* v. *Town of Saybrook,* 21 Conn., 313; *Pollard's Lessee* v. *Hagan,* 3 How., 212; *Martin* v. *Waddell's Lessee,* 16 Pet., 367; Houck on Rivers, §§ 124, 126, 198, 199, 200; *Towns of Groton and Ledyard* v. *Hurlburt,* 22 Conn., 178; *Wilson* v. *Black Bird Creek Marsh Co.,* 2 Pet., 245; *Gilman* v. *Philadelphia,* 3 Wall., 729; *License Cases,* 5 How., 583; *Towns of Wethersfield and Glastonbury* v. *Humphrey,* 20 Conn., 218; *State of Pennsylvania* v. *Wheeling Bridge Co.,* 13 How., 518; Gen. Stat., tit. 31, ch. 2, § 29; *Salem and Hamburgh Turnpike Co.* v. *Town of Lyme,* 18 Conn., 457; *The People* v. *Smith,* 21 N. Y., 595; *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. R. Co.,* 17 Conn., 465; *Town of Waterbury* v. *Hartford, Providence & Fishkill R. R. Co.,* 27 id., 154.

CARPENTER, J. The constitutional power of the state to authorize the construction of a highway across the cove in question does not seem to be controverted. The learned counsel for the respondents, in their brief and during the argument, deny that the statute has conferred on the Superior Court any power to lay out a highway across a navigable river, the navigation of which is of such a character that it will require a draw-bridge for its accommodation. That being the only question presented, we shall waive any discussion of the constitutional questions referred to and discussed to some extent by the counsel for the petitioners.

The statute in general terms confers on the Superior Court the power to lay out highways in certain cases, and prescribes the manner in which it shall be done. Stat., p. 498, sec. 29. The statute however is silent in respect to bridges. That the power to lay out a highway carries with it the power to require the construction of bridges in the line of the highway, over all streams and rivers not navigable, cannot be denied. It must also be conceded that inlets and rivers navigable to some extent are within the limits of this power. That such has been the practical construction of the statute the records of our courts and reported cases will abundantly show. *Wethersfield and Glastonbury* v. *Humphrey*, 20 Conn., 218; *Clark.* v. *Saybrook*, 21 id., 313; *Groton and Ledyard* v. *Hurlburt*, 22 id., 178.

But we are urged to limit this power to those cases in which the navigation is so inconsiderable as not to require the construction of a draw-bridge. We have not discovered any good reason for such a limitation. It would prove detrimental to the interests of the public along our navigable rivers and sea coast, by checking improvements in the matter of highways, while, on the other hand, the advantages sought to be secured thereby are unimportant and inconsiderable. The extent of navigation on this cove, and the injury thereto by the proposed bridge, are found as follows:

"The cove is navigable for scows, open-deck vessels, and other small craft of light draft, from its mouth to said village. The cove is so navigated, more especially by the people of said village, for the purposes of transporting the coal which is there used for factory purposes, and to some extent by the inhabitants for fuel, also for bringing up rockweed used by them for agricultural purposes. The cove is also used for conveying lumber from said village to places on the Thames river and the village of Mystic. And such navigation is useful and valuable to the inhabitants of said village and vicinity. And a bridge across the cove at the point indicated in the report would be an obstruction to such navigation, unless such bridge should be constructed with a suitable draw, so as to permit vessels of the character described to pass."

Brown *v.* Towns of Preston and Ledyard.

From . this it is apparent that if the bridge is constructed with a suitable draw, the injury to navigation will be very slight. Whatever the inconvenience may be, it was doubtless fully considered by the committee in determining the common convenience and necessity of the proposed highway. It was proper that it should be so considered. Upon such consideration it is found that the public wants require the construction of the highway, including the bridge. The slight inconvenience to which those interested in the navigation of this cove will be subjected, should be endured for the sake of the greater good accruing to the public at large.

The most serious objection to construing this statute as conferring the powers contended for, is found in the fact that the statute makes no provision for the construction of a draw-bridge. Although the statute contains no express authority, yet we think it may be clearly implied in cases where public convenience and necessity demand a highway across a navigable stream of water. Towns in the construction of highways exercise the right of eminent domain, which right is delegated to them by the legislature. The obstruction of navigation by means of a draw-bridge is an exercise of this same right. The power implied therefore is of the same general nature, and is necessary in order to secure fully the main object contemplated by the statute.

It is further claimed that this power has rarely, if ever, been exercised. Whether this claim is well founded in fact or not we are not prepared to say. In two of the cases referred to, *Wethersfield* v. *Humphrey,* and *Groton and Ledyard* v. *Hurlburt,* the court expressly alludes to draw-bridges as a means of preserving the rights of parties interested in navigation. In the former case, the power to require the road to be so constructed as to prove no obstruction is spoken of as being in the courts. We entertain no doubt that in some way the rights of all parties interested may be preserved. The mode of doing it is not the question now before us.

We find no error in the record.

In this opinion the other judges concurred; except FOSTER, J., who dissented.