LEVI GOODWIN AND OTHERS vs. THE TOWN OF WETHERSFIELD.

A committee upon a petition for the laying out of a highway, having closed the hearing and being in consultation and a majority being in favor of laying out the road, one of the selectmen of the respondent town, who was also interested personally in opposing the road, came to them privately and stated that he could procure the opening of another road by the town that would satisfy all parties, and asked for delay that he might do so, and the committee consented to the delay and informed him that, if his plan succeeded, they would report against the laying out of the highway. The selectman afterwards procured the opening of the substitute road by the town, but it was not satisfactory to the petitioners, and the committee finally reported in favor of the proposed highway. Held that the conduct of the committee, while irregular and improper, was not sufficient reason for setting aside their report.

The petitioners having been in no fault in the matter, and having derived no benefit from the irregularity of the conduct of the committee, ought not to suffer by reason of it.

Where, after the close of a hearing and an adjournment for argument, the respondents offered certain rebutting evidence which they claimed to have discovered since the adjournment, but did not show that they could not have obtained it earlier by reasonable diligence, and the committee refused to open the case to hear it, it was held to be no ground for setting aside their report upon a remonstrance of the respondents.

Where the court fixes by its order a time and place for the hearing before a committee, and directs certain notice of it to be given by them, the committee may yet, after the hearing has commenced, adjourn at its discretion to any later time and any other place, acting reasonably and fairly in the matter, and giving notice to those present.

Where a committee, having completed its hearing as to the laying out of a high-

way, adjourned without fixing a time and place for a further meeting to assess damages for the land taken, it was held that a notice signed by a majority of the committee, appointing a time and place for such further meeting, which was duly served upon all the land holders interested, was legal and sufficient.

Where a new highway, as laid out by a committee, terminated in an open field, at or near a town line, and was not connected at such terminus with any public highway or open thoroughfare, it was held to be no sufficient reason for setting aside the report.

The question in such a case, as to the public convenience and necessity of the road, is one of fact, and can not be reviewed by the court.

PETITION for the laying out of a highway; brought to the Superior Court in Hartford County. The report of a committee in favor of the laying out of the road, was, upon a remonstrance against its acceptance, set aside by the court (*Martin, J.,*) and a new committee appointed. This committee reported against the laying out of the road, and upon a remonstrance of the petitioners against the acceptance of the report, the court (*Beardsley, J.,*) accepted it, and dismissed the petition. The petitioners then brought the record before this court by a motion in error. The case is sufficiently stated in the opinion.

*H. S. Barbour* and *S. W. Adams*, for the plaintiffs in error.

*L. P. Waldo* and *A. P. Hyde*, for the defendants in error.

PARDEE, J.   Levi Goodwin and others brought their petition to the Superior Court for Hartford County at the March term, 1873, for the laying out of a highway in the town of Wethersfield. That court appointed a committee to inquire as to the necessity for such new way; which committee, having heard the parties, reported to the court at the September term, 1873, " that the highway prayed for in said petition is of common convenience and necessity." The town and certain individuals, respondents, remonstrated against the acceptance of this report, and the court at the March term, 1875, set it aside and referred the petition to a new committee, who heard the parties and reported to the court at the same term, that the public convenience did not require the laying out and establishment of the highway prayed for. The

petitioners remonstrated against the acceptance of this last report, but the court accepted it and dismissed the petition with costs. They then filed a motion in error, assigning for reasons that the court erred in rejecting the first report and in accepting the second.

The respondents alleged that there had been irregular and improper conduct on the part of the committee in the performance of their duties, in this, that the committee, having brought their public hearings to a close on the 4th day of September, 1873, subsequently, upon the same day, met by themselves and took an informal vote upon the question which had been submitted to them, a majority voting to lay out the proposed highway; that they met again by themselves upon the succeeding day for consultation; that while in session Mr. Johnson, who was first selectman of the town of Wethersfield, and during the trial had acted as the agent of the town, as well as for himself as an interested individual, came to them privately, and promised that if they would defer further action in the matter he would procure a new highway to be laid out and accepted by the town, which would be satisfactory to all parties; and that they consented to the delay and assured him that if he should carry out his plans they would make a report adversely to the petitioners and contrary to the report they then contemplated making.

In the case of *Harris* v. *Town of Woodstock*, 27 Conn., 571, this court said: "As the mode of trial before a highway committee is very different from that before a jury, much less strictness is required in relation to the intercourse between parties or counsel and the triers in one case than in the other." In *Wethersfield* v. *Humphrey*, 20 Conn., 226, the report of a highway committee was accepted notwithstanding the fact that they had received a written statement concerning the case from one of the counsel after they had closed their hearing, the court saying, "Were this committee a jury, empaneled to act in court and sworn to decide according to the evidence given in court, and to keep their own counsel, and suffer no one to speak to them about the business or matters in hand but in court, the objection would have great force. But this

is not the character of the committee.  They may, and they are expected to, hear evidence from all persons who feel an interest, on the ground and elsewhere."

We cite these cases chiefly for the purpose of saying that we do not intend herein to overrule them.  The conduct of the committee in the case before us will bear the test of a trial by the rigorous rule applied to jurors; and that rule was thus stated in *Pettibone* v. *Phelps*, 13 Conn., 450 : "It is now well established by the modern authorities that every instance of misconduct in a juror will not destroy the verdict. The rule extracted from the cases seems to be, that however improper such conduct may have been, yet if it does not appear that it was occasioned by the prevailing party, or any one in his behalf, if it does not indicate any improper bias upon the juror's mind, and the court cannot see that it either had or might have had an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside. A contrary rule would in many cases operate most unjustly. It would punish an innocent person for the offense of another. If a juror conducts improperly and violates his duty and his oath, *he* ought to be answerable for it, and not a party in the cause, who is in no manner accessory to the misconduct.  To deprive a party of a verdict which he may have honestly obtained after a protracted and expensive litigation, merely because a juror may have improperly spoken of the cause, when he could have received no benefit from that act of the juror, and his opponent no injury, would seem hardly compatible with a due administration of justice.  If, indeed, he, or any agent of his, will approach a juror while the cause is on trial and speak of the subject matter of the suit, it will destroy a verdict in his favor.  He ought to know and feel that he may lose but cannot gain by such conduct.  Depriving him of his verdict will operate as a punishment for his violation of the law.  So, too, if it appear that the unsuccessful party either sustained or might have sustained injury from the juror's misconduct, it is reasonable that a new trial should be granted, that justice may be done between the parties.  It is undoubtedly the duty of courts, as far as practicable, to

preserve the purity of trials by jury; and it is said that this can best be effected by setting aside every verdict where a juror has spoken of a cause contrary to his oath. But it is difficult to see how such a result would be produced. The juror does not suffer by setting aside the verdict; it is the successful party alone that is injured. It is true that in some cases that rule seems to have been adopted; but in our opinion it is neither in conformity with a fair administration of justice, nor with the more recent cases." In *Hamilton v. Pease*, 38 Conn., 117, the court said: "The court have appreciated the actual hardship of depriving an innocent party of his verdict because of the misconduct of a juror, which hardship is not counterbalanced by the possibility of hardship upon the other party, for the reason that the verdict but for the misconduct might have been the other way, and they have not applied the doctrine when it appeared that the successful party could not have received any benefit from the misconduct, or his opponent any injury." In the case before us it is to be noticed that the committee had determined to report in favor of the petitioners before Mr. Johnson made his suggestion to them; they announced this result to him as one of the respondents, thus showing that they had determined the character of their report and that they then announced the result to one of the parties. They thereupon separated.

If the plan had been carried to completion it would, of course, have brought all parties to the point of desiring that the highway asked for by the petitioners should not be laid out; virtually, it would have made it unnecessary to publish any decision. The petitioners would have been under no inducement to continue proceedings under their petition, their purpose having been accomplished; they must have withdrawn it or consented to the committee's making an end of it by an adverse report. Neither the town nor any individual respondent would have had any occasion for further expenditure of time or money in resisting it; litigation and its attendant costs would have been stopped by the voluntary agreement of all parties; and the respondents would have reaped this additional advantage—that the establishment of a highway which

they considered prejudicial to their interests would have been prevented. The committee had reached a definite conclusion after a trial fairly and impartially conducted; the cause of the respondents was lost before the suggestion was made; that was wholly in their interest; we cannot infer from the act of listening to something in their favor that the conclusion previously reached was the result of an improper bias against them. We do not see in the proposition any element calculated to affect the formed opinion of the committee as to the common convenience and necessity of the highway concerning which they had inquired; for, although their promise to Mr. Johnson was to change the form of their report, it is quite obvious that in reality that promise was not understood to refer to any re-examination of the case; it implied merely that if all of the petitioners and all of the respondents united in saying to them that they had by voluntary agreement substituted another way for the one petitioned for, they, the committee, would make an end of the petition by denying its prayer. This being done with the petitioners' consent was legally equivalent to a withdrawal of it by themselves; the plan implied that the published determination of the committee, based upon evidence and arguments, should stand unchanged, and after a brief delay be reported to the court by which they were appointed, unless all parties united in asking them to withhold it. It proposed the voluntary adjustment of the controversy without pressing the tribunal considering it to a judgment.

But, though Mr. Johnson procured the opening by the town of another road which he intended as a substitute for the one asked for by the petitioners, yet it was not satisfactory to them, so that the plan failed. It is clear that the suggestion of the plan had in no degree impressed itself upon the report; for that as made to the court was the one which the committee had determined to make before Mr. Johnson spoke to them, and of which he was notified as a party; it had undergone no change; the respondents had suffered therefore to this extent —that the committee had delayed for a few days the submission to the court of a decision adverse to them. It was sug-

gested in argument that the committee might have adhered to their determination to lay out the way, not because they continued to be of opinion that it would promote the interests of the public, but for the purpose of inducing the parties to believe that the interference had not affected the result; but there is nothing in the record which would justify us in finding, in this finely drawn theory concerning the operations of the mind and the motives which may possibly control human action, a reason for setting aside the report. Although the plan was framed in the interest of peace and looked to the end of litigation by agreement, a result always satisfactory to the law, there was an impropriety on the part of Mr. Johnson and on the part of the committee as well, as to the time and manner of making and of listening to the suggestion. That every tribunal shall act with fairness and impartiality is the law of its being; therefore no tribunal can safely listen to any proposition concerning a cause pending before it, made by one party in the absence and without the knowledge of the other; and no tribunal can retain public confidence or long exist after it has exposed itself even to suspicion in this regard.

We do not think that any corrupt motive governed the action of the committee. We say this notwithstanding the fact that they listened to a request that the interview should remain a secret, and thereby most unnecessarily invited suspicion; for the proposal was to lay out a highway and to have the town accept it, and to have all parties agree to this and to substitute it for the one under consideration by the committee. This would involve the highest degree of publicity; would involve knowledge of the whole transaction on the part of all persons whose interests could be affected.

As the case finds that the improper act on the part of the committee was not occasioned by the petitioners nor by any one in their behalf; as we cannot see that they derived any benefit from it; or that the act indicates that the mind of any member of the committee was under any improper bias against any of the respondents; or that the act had or might have had any unfavorable effect upon their cause; and as the petitioners obtained, after what we may presume to have been

a somewhat expensive trial, a favorable report; we think there was no sufficient reason for setting it aside and depriving them of its advantages; and it would seem to be quite inequitable that the respondent town should take a bill of costs from the petitioners as the result of an act of impropriety performed by their selectman; by the man who had acted as their agent during the trial before the committee.

On the hearing before the committee at Wethersfield on the 1st, 2d and 4th days of September, 1873, the town of Wethersfield claimed that the petitioners had a right of way to their lands in the Great Meadow over and along a route shown to the committee, and offered evidence in support of the claim. The petitioners denied this claim and offered Mr. Andrews as a witness, and he testified that the town had paid a sum of money for the right of the petitioners to pass for a single year over and along said way within the preceding fifteen years. On October 20th, 1873, the town of Wethersfield proposed and offered to prove by competent evidence that this payment to Mr. Andrews was made more than fifteen years before, and that this evidence had been discovered since the last meeting of the committee on the 4th day of September. Upon the objection of the petitioners the committee declined hearing the testimony.

The respondents insist that in this the committee erred, and that their report should be set aside.

This was an application for a re-hearing upon the ground of newly discovered evidence. Concerning such an application addressed to an auditor who had closed his public hearings in a cause referred to him, this court said, in *Welles* v. *Harris*, 31 Conn., 369, as follows: "We think a party ought not to be allowed to take his chance of obtaining an award in his favor upon such evidence as he may happen to have at a trial, and if he fails in his object to then have an opportunity to look up witnesses, who, as in this case, he had every reason to suppose might be able to give important evidence in his favor, and in this way to experiment upon the chance of obtaining a more favorable result on a second trial. We think therefore there was such laches in suffering the trial to proceed

without even moving for a postponement as would have made it the duty of the auditor as a matter of discretion to refuse the application to re-try the cause.  *  *  *  *  And as the application for a re-hearing was in the nature of a motion or petition for a new trial, we think it should not only appear that the evidence was new and undiscovered at the time of trial, and could not have been had by the use of reasonable diligence, but that it is material evidence and sufficient probably to produce a different result, as is required in applications for that purpose." In the case before us, Mr. Adams, the newly discovered witness, was a party respondent, and presumably present at the trial. The respondents did not claim before the committee, have not alleged in their remonstrance, and it is not found as a fact, that the testimony of Mr. Adams could not have been presented to the committee upon the trial of the case, by the use of reasonable diligence; they have not alleged and it is not found that they made any effort to meet the case presented by the petitioners upon the point to which Mr. Adams was called. Inasmuch as this application is to be tried by the rules which govern applications for new trials either at law or in equity, we are of opinion that the second thought of the committee was correct, and that they fell into no error in rejecting the application thus made.

On the 5th day of September, 1873, the committee separated without formal adjournment and without giving notice of the day upon which they would again meet. On the 20th day of October, 1873, L. M. Smith and H. S. Hayden, two of the committee, issued a notice of that date to the owners of lands over which the new highway was laid out, to appear before them at the United States Hotel in Hartford on the first day of November, 1873, at 9 o'clock A. M., to be heard relative to the assessment of damages and benefits accruing to individuals by the laying out of the highway; which notice was served upon all the land-owners interested, they being all named in the notice. The committee met pursuant to this notice and heard such parties as were present. The respondents argue that the committee acted irregularly and improperly in attempting to hear the parties in the matter of

damages and benefits at a time and place not fixed by the court appointing them.

It is to be observed that the statute speaks of but one *notice* to those interested; that is the notice which the court in its order fixing the time and place for the meeting of the committee requires to be given.   The parties being before the committee according to the order of the court, and the trial having been thus legally commenced, it is left to the committee to continue it and keep the parties before them by such form and manner of adjournment as they shall see fit to adopt; any unreasonable, unfair or partial conduct on their part, in this respect, being reason for setting aside any report which they may make.   An adjournment publicly announced is the easiest and the most common mode of securing the attendance of parties; a written notice signed by the committee· and duly served upon every person interested involves much more labor, but it is equally effective.   In the present case the committee gave notice to all ·persons interested that they would meet and hear them upon the 1st day of November following.   It is neither alleged in the remonstrance nor found as a fact that this notice was either insufficient in form, unreasonable as to time, defective as to service, or that any respondent failed to receive it.   The objection represents no real grievance.   If near the close of a trial of many days' duration the committee should inadvertently separate at the close of a day's sitting without publishing the formal adjournment, the language of the statute does not compel us to say that the thread of the trial is broken and that the work done is lost.   We think that the fact that the committee pursued their inquiry upon the 1st day of November upon the notice above described, does not vitiate their report.

What we have said as to *time* applies equally to *place*.   The committee having opened the trial at the place specified in the commission from the court, had power to continue it at another place, giving due notice of the change, being responsible to the court for their action in this respect.   It is not alleged in the remonstrance, and it is not found as a fact, that the change of place occasioned the slightest injury, or inconvenience even, to any person interested.

Goodwin *v.* Town of Wethersfield.

The record shows that the eastern terminus of the new highway as laid out by the committee is in an open field in the Great Meadows, at or near the old line between the towns of Wethersfield and Glastonbury, and is not connected with any public highway or open thoroughfare; and the respondents insist that therefore the committee acted irregularly and improperly in holding that the proposed way was necessary as a highway. In *Peckham* v. *Lebanon,* 39 Conn., 235, this court said: " The authorities therefore would seem to establish the proposition that a highway may exist over a place which is not a thoroughfare. Cases will readily occur to the mind in which it is possible that common convenience and necessity may demand the construction of a highway as a mere *cul de sac;* as a highway to navigable waters where there is no public landing; a highway extending into wild and uncultivated lands, to mills, manufacturing and mechanical establishments, and the like." The mere fact therefore that the highway laid out by the committee terminates in an open field at the line between towns, does not of itself, as a matter of law, determine the question as to the common convenience and necessity of the highway adversely to the petitioners. The presence of such a fact would arrest the attention of the committee and compel them to move with caution; presumptively, it had its due weight. We see no reason for making this case an exception to the ordinary rule that the question as to the common convenience and necessity of a proposed highway is one of fact to be determined by the committee and is not subject to review by the Superior Court.

There was error in holding that the respondents' remonstrance was sufficient; in rejecting the report of the first committee; in appointing a second committee; in holding that the petitioners' remonstrance against their report was insufficient; and in accepting that report.

In this opinion the other judges concurred.