WILLIAM BRYAN, Jr., AND OTHERS vs. THE TOWN OF BRANFORD

An engineer who has had experience in making plans and estimates for the building of bridges and has superintended their construction, can properly testify as an expert with regard to the probable cost of a bridge, although he has had no experience as a practical bridge builder.

And it does not affect the case that he has obtained the prices of the materials for the bridge from persons who deal in such articles.

Under the statute authorizing the laying out of highways, a highway with a draw-bridge can be laid out over a navigable river.

Bryan v. Town of Branford.

The statute (Gen. Statutes, p. 239, sec. 47,) which allows a committee to receive and regard as evidence on the question of the cost of a new highway. a bond for the construction of the highway for a stated price, applies to a highway so laid out.

The act of 1875 (Session Laws of 1875, p. 57,) which provides that such a bond shall stipulate that the work shall be done to the acceptance of the county commissioners, does not repeal, but is to be taken in connection with, the former act (Gen. Statutes, p. 239, sec. 47,) which provides that such a bond shall be conditioned for the doing of the work "in a specified time and manner."

It is no objection to the laying out of a highway on the ground of public convenience and necessity, that a considerable part of the public travel will be for the purpose of recreation and pleasure. The accommodation of that class of travellers is to be considered with that of the rest of the public.

Travel which is limited to the summer months is entitled to less weight in determining whether there is a public necessity, than that which is constant.

Where evidence that should properly have been received in chief has been admitted at a later stage of the trial, the matter is wholly one of discretion, and is not a ground of error.

CIVIL SUIT for the laying out of a highway; brought to the Superior Court. Report of a committee in favor of laying out the highway, remonstrance by the defendants against the acceptance of the report, remonstrance overruled and decree laying out the highway, (*Beardsley, J.,*) and motion in error by the defendants. The case is sufficiently stated in the opinion.

*J. W. Alling* and *W. A. Wright,* for the plaintiffs in error.

*L. Harrison,* for the defendants in error.

LOOMIS, J. The questions for review in this case are based upon certain decisions of the Superior Court overruling the defendants' remonstrance to the report of a committee laying out a highway in the town of Branford.

1. The highway was laid across Branford river, which required the building of a bridge with a draw for the accommodation of vessels, and the cost of the bridge became an important question before the committee. Upon this subject the plaintiffs offered the testimony of A. B. Hill and Charles

H. Fowler as experts. To show their qualifications as such the plaintiffs proved that they were civil engineers by education and profession; that Hill for some time had been assistant and Fowler chief engineer in the engineer's department of the city of New Haven; that it was part of their duty to make plans of and estimates for the cost of bridges in the city of New Haven; that they had had considerable experience for a number of years in making plans and specifications for bridges in that city and its vicinity, and in making estimates of their cost, and also in personally superintending, in behalf of the party for whom they had made plans and estimates, as engineers, the building of such bridges by the various contractors who had undertaken to construct them; that the market price of materials was gained from those who dealt in them—the price of iron from iron manufacturers and of lumber from lumber dealers—but that they had personal knowledge of the market price of labor required to construct bridges; and that they had made plans for the construction of the bridge proposed and specifications in detail, the same as described in the bond offered in evidence, together with estimates of the cost.

The defendants contended that these facts did not show the necessary qualifications to enable the witnesses to testify as experts in regard to the cost of the proposed bridge. It was conceded that they had sufficient education and knowledge and were entirely competent to make plans and specifications, but it was contended that the fatal defect in their competency was that they had not actually built bridges. To give plausibility to the objection it was claimed that the meaning of the term "expert" was limited by the strict sense of its Latin derivation—that is, to "a person instructed by experience." But the legal sense of the term has always been much broader. Lord MANSFIELD in *Folkes* v. *Chadd*, 3 Doug., 157, extended it to "all persons professionally acquainted with the science or practice in question." In Best on Evidence, vol. 2, § 513, it is said that "on questions of science, skill, trade and the like, persons conversant with the subject matter are permitted to give their opinions

in evidence." And the rule is the same as laid down in 1 Greenleaf's Evidence, § 440. In Stephen's Digest of the Law of Evidence, art. 49, p. 104, it is said that "when there is a question as to any point of science or art, the opinions upon that point of persons specially skilled in any such matter are deemed to be relevant facts." In *Ardesco Oil Co.* v. *Gibson*, 63 Penn. St., 152, it is said that "while undoubtedly it must appear that a witness called as an expert has enjoyed some means of special knowledge or experience upon the subject in question, no rule can be laid down as to its extent."

In *Spring Co.* v. *Edgar*, 99 U. S. Reps., 645, it is said that "it is very much a matter within the discretion of the court whether to receive or exclude the evidence, but the appellate court will not reverse the ruling in such a case unless it is manifestly erroneous." But so far from experience being the test of competency, it was held in *Taylor* v. *Railway Co.*, 48 N. Hamp., 304, *State* v. *Wood*, 53 id., 484, and *Tuller* v. *Kidd*, 12 Ala., 648, that a physician may give his opinion as an expert upon a subject concerning which he has had no practical experience and where his knowledge was derived from study alone. The want of experience would of course in many cases affect the weight and credibility of the evidence.

It seems clear that the objection can derive no support from legal authority. And if experience was made an essential qualification, it ought not to be overlooked that the witnesses in question had much experience in estimating the cost of bridges—the very matter in question. But it is said they had no opportunity to verify their estimates by the actual results. It is hardly possible that they could repeatedly be called upon to make these estimates without being informed afterwards of the results, and it would undoubtedly be so where they personally superintended the same work through all its stages, as they did in some cases. It is further said that in estimating the cost of materials they had to inquire of others having the materials for sale. This is true, and would apply as well to the practical bridge

builder, were he called upon to make an estimate of the cost. It would not do to take the prices paid on some former occasion. They might vary materially. Some inquiry as to the market prices at the particular time in question would be necessary.

In this discussion we have assumed (contrary to several decisions in this state) that the strict rules of evidence apply in full force to trials before committees in highway cases, and yet we find no error in the ruling complained of.

2. The next question is, whether the committee erred in receiving the bond for the construction of the road and bridge.

In the first objection the defendants' sole grievance is that the evidence was not offered in chief. If we assume that by the strict rule of procedure it should have been so offered, yet, as the time and order of admitting evidence during the trial rested in the discretion of the committee, no error can be predicated on this ground. *Doane* v. *Cummins*, 11 Conn., 158; *State* v. *Alvord*, 31 id., 46; *Chapman* v. *Loomis*, 36 id., 459; *Stirling* v. *Buckingham*, 46 id. 463.

The next objection is, that the statute allowing a bond to be received in evidence does not apply to a case like this, where the proposed highway crosses a navigable river, requiring a bridge over the same with a draw. But the statute (Gen. Stat., p. 239, sec. 47,) allowing the committee to receive such bond and regard it as evidence, in terms applies to every case where an application shall be pending before the Superior Court for the laying out of any highway, and there is no exception mentioned. It would seem therefore that if the committee had a right to lay out the highway at all, they had the right to receive the bond. But the right to lay out a highway, with a draw-bridge, over a navigable river, was established by the decision of this court in *Brown* v. *Town of Preston*, 38 Conn., 219.

The remaining objections relate to the form or condition of the bond; and here, although several particulars are mentioned and criticised, yet we deem it unnecessary to consider them, except as they are involved in the question

Bryan *v.* Town of Branford.

whether the bond was in compliance with the provisions of the statute.    There are two statutes relating to this subject, one found in the General Statutes, p. 239, sec. 47, which requires that the bond " be conditioned to make or alter such highway in a specified time and manner," and the other, found in the session laws of 1875, p. 57, providing that the condition " shall contain a proviso that the highway shall be constructed and graded to the acceptance of the county commissioners."

Now the bond in question specifies particularly the work and the manner of the work, and requires its completion in a specified time, and that it is all to be done " to the acceptance of the county commissioners," and so complies in terms with both statutes.    But the defendants earnestly contend that nothing at all should have been mentioned about the work, nothing in respect to the dimensions, materials or construction of the bridge, but only that it should be in every particular such a structure as the county commissioners might accept.

What is this in effect but a claim that the statute first cited is repealed by the last?    But no repeal is expressed, and there is no such inconsistency as might imply a repeal. Both statutes can stand together in harmony.    Indeed, it seems to us that the last is on its face a mere additional requirement, and not a substitute which excludes the other.

If the defendants' construction is correct, no prudent person would consent to bind himself to build a bridge for a specified sum without mentioning the work he was to do and the materials he was to furnish.    There would be no basis upon which to estimate the expense—no guide or standard for the conduct of the work; all would remain uncertain until it was too late to recall the bond, and then a bridge of wood which had been estimated for and expected might be discarded and one of stone or iron required.    It seems to us also that the committee, in determining the question of common convenience and necessity, if they are to receive a bond in evidence, ought to know what sort of structure will be built for the sum named; and the town

also, which is to be burdened with the expense, needs the same knowledge in order to decide whether it will accept the bond or let to others the building of the road. We conclude that both the statutes referred to are in force, and that they mean that the work particularly specified in the bond shall be done to the acceptance of the commissioners.

3.   The last point for our consideration involves to some extent the construction of our statute relative to the purposes for which highways may be laid out.

It appeared on the trial before the committee that the proposed road would shorten the distance between Branford Depot and a place in Branford known as Indian Neck, nearly a mile, and that the latter place was a noted summer resort on the shores of Long Island Sound, where there were private dwelling houses and public hotels and boarding houses. After giving to some extent the details as to travel and business between those points, the record adds:— "But the principal feature about Indian Neck has been and is, that it is a popular resort during the warm months of the year for persons from all sections of the country, in and out of this state, with but very few from Branford, in search of health, recreation or pleasure, or all combined, and it is this fact which has led to the development of the real estate, hotel, boarding house and livery business above described." No evidence as to the condition of Indian Neck, or as to what was done there, or the nature of travel to and from there, was objected to while the evidence was being received, but on the argument the defendants claimed that, in so far as travel to the Neck for pleasure or recreation was concerned, it should not be considered by the committee in deciding the question of common convenience and necessity. But the committee did take into consideration the fact and needs of such travel in connection with the other evidence in the case.

In order to support this objection a very narrow construction of the words "common convenience and necessity," as used in the General Statute, p. 238, sec. 38, must be given; hence the defendants select the word "necessity" as the

controlling word and make its legal and literal meaning the same, namely, that which is indispensable. If this is correct there could be no new road to Indian Neck, for the public have an existing way there, and as they have hitherto done without any other so they may as well hereafter; and wherever there is an existing way between two termini that is passable, it would be impossible that another should be indispensable.

We think the meaning of the statute is not to be so restricted. It is very common to give the word "necessary," as used in statutes and in legal propositions, a much more liberal meaning. For instance, the statute which exempts from warrant or execution bedding and household furniture "necessary for supporting life," although seemingly narrowed by the specified object, is held not to refer simply to articles indispensable to subsistence, but to include those of convenience and comfort. *Montague* v. *Richardson*, 24 Conn., 338. And where persons holding certain relations to others are liable for necessaries, the term is not restricted to what is requisite for sustenance, but often includes much more, depending on the circumstances, situation and social position of the parties. *Harris* v. *Dale*, 5 Bush, 161. So statutes excepting works of necessity from a prohibition of labor on Sunday, are not construed as confining the exception to acts of absolute physical necessity. *Morris* v. *The State*, 31 Ind., 189; *Flagg* v. *Millbury*, 4 Cush., 243.

We are aware that some of these cases are put on the ground that a liberal interpretation of the statute should be given in furtherance of the object. But the underlying principle of a liberal interpretation is that it is most reasonable considering the object and circumstances. We invoke this principle as applicable here. The necessity referred to is not absolute, but a reasonable public exigency. The words that precede, namely, "common convenience and," somewhat modify the meaning of "necessity." In *Hays* v. *Briggs*, 3 Pittsb. (Pa.,) 504, under what is known in Pennsylvania as the "Lateral Railroad Act," providing for the

taking of the lands of individuals for railroads under certain circumstances where it is found "necessary and useful for public or private purposes," it was held that the necessity contemplated by the statute was a reasonable and not an absolute one. And the same statute was construed in like manner by the Supreme Court of that state in *Harvey* v. *Lloyd*, 3 Penn. St., 331.

In *Dudley* v. *Cilley*, 5 N. Hamp., 558, REDFIELD, J., in giving the opinion of the court said:—"In determining what constitutes an occasion for laying out a highway for the accommodation of the public, three things are to be considered: 1st, the public exigency and convenience; 2d, the burden that is upon the town or towns; and 3d, the rights of individuals whose lands may be taken for the purpose. And the rule is, that when the public exigency is such that it will justify the taking of the lands of individuals without their consent for the purpose, and will also justify the burden upon the town making the road and keeping it in repair, then there is occasion for a highway. When such a case is shown the rights of individuals must give way to the public convenience and necessity and the town must submit to receive the burden."

The public exigency, though the same in kind, may vary much in degree. A large amount of travel will justify a large expenditure—a smaller amount a less expenditure; and yet the common convenience and necessity may require the road in both cases.

But not to dwell longer in exposition of the statute we proceed to the precise question under consideration. It is not whether pleasure travel alone would justify the laying out of a highway, but whether the fact and needs of such travel may be considered at all in connection with evidence showing still more urgent public demands. The entire amount of lawful public travel to be accommodated must be considered in deciding what the public exigency requires. As the traveler for pleasure or recreation has his rights in the use of a road when made, so his voice may unite with others in making a public demand for a new road. The travel of course which is temporary, and which uses the

Bryan v. Town of Branford.

road only a few months in the year, will have much less weight than that which is permanent.

In *Woodstock* v. *Gallup*, 28 Vermont, 587, it was held that even ornament and the improvement of grounds about a public building might be taken into consideration and regarded in connection with the convenience and necessity of a proposed highway, although alone they would not constitute a sufficient basis for establishing it. This in principle fully sustains our position in the case at bar. In *Higginson* v. *Nahant*, 11 Allen, 530, the court goes much further than is required for the purposes of the case under consideration. It was there held that the selectmen have authority to lay out a highway wholly upon land of citizens against their consent, entering their land from a highway and returning to it at about the same place where it entered and leading to no other way or landing place, capable of being used for no purpose of business or duty or of access to the land of any other person; and which is laid out with the design to provide access, not for the town merely, but for the public, to points or places in the lands of those citizens esteemed as pleasing natural scenery. HOAR, J., in giving the opinion said:—" We are not aware of any case in which it has ever been held that where there is an amount of travel sufficient to warrant the construction of a road, which permanently seeks a particular avenue, the purpose for which the public want to travel is to be regarded, if the purpose is lawful. The plaintiffs have contended that the purpose for which a road is wanted must be of business or duty in order to create a public exigency. But we think it impossible to go into such refinements. Nahant itself is a town which owes much of its population to its attractiveness for other purposes than business or profit. The passing from place to place is a rightful object of public provision in itself, and the occasions for it are as extensive as the pursuits of life. Pleasure travel may be accommodated as well as business travel."

There was no error in the judgment complained of.

In this opinion the other judges concurred.